IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TRACEY WOLFE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:11-CV-02015-L** |
| § | |
| NICHOLAOS C. BELLOS, § | |
| § | |
| Defendant. § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant's Motion to Dismiss or Alternatively to Abate, filed August 24, 2011. For the reasons that follow, the court **grants** Defendant's Motion to Dismiss as to Wolfe's federal claims brought pursuant to section 10(b) of the Securities Exchange Act and Rule 10b-5, and **dismisses with prejudice** these federal claims; **denies as moot** Defendant's Alternative Motion to Abate; and **declines** to exercise supplemental jurisdiction over Wolfe's pendent state law claims (Counts 2-7 of Wolfe's Amended Complaint) and **dismisses** them **without prejudice** to Wolfe's right to bring the claims in state court.

### I.    Procedural Background

Plaintiff Tracey Wolfe ("Wolfe") brought this action against Defendant Nicholaos C. Bellos ("Bellos") on August 12, 2011, for alleged violations of section 10(b) and Rule 10b-5 of the Securities Exchange Act, alleged violations of the Texas Securities Act, fraud, negligent misrepresentation, breach of fiduciary duty, and breach of the guarantees for two promissory notes. The essence of Wolfe's claims is that Bellos made a number of misrepresentations and failed to disclose certain facts that induced her to invest in and loan approximately $336,606 to Bellos and

**Memorandum Opinion and Order – Page 1**

a limited partnership that was formed for the sole purpose of purchasing and remodeling two office buildings in Dallas, Texas, that Bellos was to lease for his medical practice. Wolfe contends that Bellos used the money she lent to him and the limited partnership for his own personal, not to purchase the limited partnership and remodel the office buildings. Wolfe further contends that Bellos never intended to repay any of the loans she made.

On August 24, 2011, Bellos moved to dismiss Wolfe's security claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Bellos argues that the court should decline to exercise supplement jurisdiction over Wolfe's state law claims if her federal securities claim is dismissed. Alternatively, Bellos urges that the court should abstain and abate the case pending resolution of related cases filed by the parties that are pending in state court.

On September 14, 2011, Wolfe filed an Amended Complaint in an attempt to correct the deficiencies noted in Bellos's motion to dismiss. In a response filed on the same day, Wolfe contends that Bellos's motion to dismiss is mooted by her Amended Complaint. Bellos counters that because the deficiencies with regard to Wolfe's securities claims continue to exist in the Amended Complaint, dismissal is still appropriate and he should not be required to file another motion to dismiss that will only serve to delay the proceedings unnecessarily.

Wolfe requested and was permitted to file a sur-reply on December 9, 2011, to address the mootness issue, as well as other merits based issues raised by Bellos. Because Wolfe contends that her Amended Complaint corrects the deficiencies noted by Bellos, and Bellos maintains that his motion to dismiss can be decided based on Wolfe's Amended Complaint without further briefing, the court believes there is no reason to delay in ruling on Bellos's Rule 12(b)(6) motion and it would serve no purpose to require the parties to refile their respective materials. *See Holmes v. National*

*Football League*, 939 F. Supp. 517, 523 n.7 (N.D. Tex. 1996); *People's Choice Home Loan, Inc. v. Mora*, No. Civ. A. 3:06-CV-1709-G, 2007 WL 120006, at *2 (N.D. Tex. Jan. 18, 2007) ("While it is a generally accepted principle that the filing of an amended complaint supersedes the prior complaint, a motion to dismiss, which attacks the original complaint for deficiencies that persist in the amended complaint, should not be denied as moot. Rather, the court should apply the motion to dismiss to the amended complaint.") (citations omitted). Accordingly, the court will consider Wolfe's Amended Complaint (referred to hereafter as "the Complaint") in ruling on Bellos's Rule 12(b)(6) motion.

## II.   Factual Background

Bellos is a physician who specializes in infectious diseases. In the spring of 2004, Bellos retained Sam Beys and his brokerage company Preston Commercial Group, Inc. to locate, finance, and purchase a new office building for his medical practice. In June 2004, Bellos executed a contract ("the Contract") to purchase for $2,700,000, two medical office buildings located at 2909 Lemmon Avenue, Dallas, Texas ("the Property"). The Contract required Bellos to deposit $50,000 in earnest money with a title company.

Thereafter, Bellos began searching for investors and approached Wolfe about providing $2,850,000 in financing. Based on her review of the Contract and Bellos's representations, Wolfe provided on July 26, 2004, a pre-qualification letter for up to $3,000,000 in financing to be used towards the purchase and remodeling of the Property. Wolfe maintains that she was not aware at this time that Bellos had already entered a separate agreement to pay Beys a $165,000 acquisition fee for brokering the purchase of the Property.

In August 2004, Bellos approached Wolfe again and requested that she personally loan him $270,606 for "tenant finish out" of the Property. Compl. 4, ¶ 15. In exchange for the personal loan, Wolfe would receive a 20% percent interest in a limited partnership to be formed by Bellos, Beys, and Wolfe to own the Property. Bellos would receive a 60% interest for a capital contribution and his agreement to have his medical practice execute a long-term master lease for the Property. Beys would receive a 19.9% interest for the work he had performed in conjunction with contracting for the Property, setting up the partnership, and securing financing for the Property. The partnership formation documents for 2909 Lemmon, LP ("the Partnership") were executed by Bellos, Beys, and Wolfe on August 31, 2004. In addition to the foregoing partnership interests, Bey's company, Beys Interests Inc., was appointed to act as the general partner and given a 1% interest in the Partnership.

According to Wolfe, four transactions subsequently took place on September 8, 2004: (1) Wolfe delivered a $270,606 cashier's check payable to American Title Company in exchange for a 20% interest in the Partnership and a promissory note that required Bellos to pay Wolfe $270,606 plus 7% interest per annum. As security for the note, Bellos pledged his interest in the Partnership; (2) Bellos and the Partnership executed a commercial lease agreement for Bellos to lease the Property from the Partnership for his medical practice; (3) Bellos obtained additional financing from Regions Bank in the amount of $2,623,500. Region Bank's loan was secured by a first lien on the Property; and (4) Bellos executed a promissory note, promising to pay Beys $40,000 plus 7% interest per annum. Wolfe asserts that Bellos represented to her that he was borrowing $40,000 from Beys to renovate the building but in truth Beys never put up any money. Instead, he deducted the $40,000 from the $165,000 acquisition fee he was paid.

**Memorandum Opinion and Order – Page 4**

In connection with the above four transactions, American Title Company issued a purchaser's statement listing the following with regard to the purchase of the Property: (1) property purchase price, $2,750,000; (2) total closing costs, $198,095.85; (3) total credits for new loans, credits, and tax proration, $2,637,489.75; and (4) total outstanding cash balance due from the Partnership, $310,606.10. Wolfe contends that the undisclosed $165,000 acquisition fee agreement between Bellos and Beys was not included in the purchaser's statement or closing file for the transaction, the closing statement; American Title Company, nevertheless, disbursed the $165,000 to Beys at the instruction of Bellos. Wolfe believes that the $165,000 paid to Beys came out of the $270,606 she loaned to Bellos to purchase and renovate the Property.

Wolfe further alleges that Bellos obtained financing from Regions Bank so he could use Wolfe's money for personal uses and not to purchase or finish out the Property as represented. Accordingly to Wolfe, Bellos approached her regarding the second loan for $270,606 after he had already obtained the loan from Regions Bank. Wolfe claims Bellos needed this additional money not to finish out the Property as indicated but instead to purchase the Property since the amount he received from Regions Bank did not fully cover the purchase price. Wolfe also asserts that Bellos never paid the $50,000 in earnest money as represented but instead had his earnest money check returned to him at the closing.

After the closing, Wolfe continued in the Partnership as a passive investor with little or no interaction with the daily operations of the Partnership. In or about March 2005, Bellos revised the Partnership agreement and loan documents to secure certain federal tax benefits for himself. As a result of the amendments, the Partnership became the maker of the notes held by Wolfe and Beys for $270,606 and $40,000. It is unclear from the Complaint whether Wolfe consented or was

aware of these amendments to the Partnership agreement. In March 2008, Beys assigned his interest in the $40,000 note to Wolfe. Wolfe does not state what precipitated this assignment.

In September 2009, the Partnership and Bellos failed to make required monthly payments on the $270,606 note. Bellos approached Wolfe in or about December 2009 about making an additional investment in the Property due to "temporary cash flow problems with the medical practice." Compl. 7, ¶ 31. Based on Bellos's representations, Wolfe "invested/loaned" the Partnership $17,000. Compl. 7, ¶ 24. On or about January 17, 2010, Wolfe "invested/loaned" the Partnership an additional $14,000 based on the reiterated representations of Bellos. *Id.* On or about September 7, 2010, at Bellos's request, Wolfe made a final "investment/loan" to the Partnership of $35,000 based on Bellos's representation that a new lease with a new tenant in the Property would cure the Partnership's cash flow problem and save the Property from foreclosure. *Id.* Other than this information, the Complaint does not include any other factual details about the 2009 and 2010 loans.

Wolfe contends that Bellos made misrepresentations regarding the true terms of the new lease claims and failed to disclose that he would not remain as a paying tenant. Wolfe further asserts that Bellos failed to make payments on and never intended to pay back the notes for $270,606 and $40,000, even though he personally guaranteed both. Wolfe maintains that she did not learn until May 2011 of Bellos's "misrepresentations and omissions [that were made] in connection with her investments in 2004, 2009, and 2010." Compl. 9, ¶ 38. Although Wolfe asserts that Bellos never intended to repay any of the loans, she only alleges that Bellos failed to pay the $270,606 and $40,000 loans. She does not allege that Bellos defaulted on the 2009 and 2010 loans and does not state when payments on the loans were due.

**Memorandum Opinion and Order – Page 6**

**III.     Bellos's Rule 12(b)(b) Motion to Dismiss**

As previously noted, Bellos's Rule 12(b)(6) motion deals only with Wolfe's securities claims under federal and Texas state law. For the reasons herein explained, the court only addresses Wolfe's federal securities claim.

    **A.     Standard for Rule 12(b)(6) - Failure to State a Claim**

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area*

*Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to raise some basis for tolling the statute. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

B.    **Analysis**

Section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act") makes it unlawful to:

> use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 implements section 10(b) of the 1934 Act and makes it unlawful for any person, directly or indirectly, to:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5(b). To state a claim under section10(b) and Rule 10b–5, a plaintiff must allege facts regarding the following: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317-18 (2011) (quoting *Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

Until 2002, claims brought under section 10(b) of the Securities Act of 1934 and Rule 10b-5 were governed by a one-year statute of limitation and a three-year statute of repose. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991) ("Litigation instituted pursuant to § 10(b) and Rule 10b-5 . . . must be commenced within one year after the discovery of

**Memorandum Opinion and Order – Page 9**

the facts constituting the violation and within three years after such violation."). In 2002, Congress enacted the Sarbanes-Oxley Act, which extended the statute of limitation to two years and the statute of repose to five years. *See* 28 U.S.C. § 1658(b) (2002). As a result, section 10(b) and Rule 10b-5 claims must be filed within two years after the discovery of the violation. *See id.* In any case, a securities claim under federal law must be filed no later than five years after the date of the alleged violation. *Id.* Unlike the limitations periods, which do not run until after the discovery of the facts constituting a violation, the repose period begins to run the moment the alleged violation occurs, regardless of the plaintiff's discovery. 28 U.S.C. § 1658; *see Lampf, Pleva, Lipkind, Prupis & Petigrow*, 501 U.S. 350, 363 (1991); *Topalian v. Ehrman*, 954 F.2d 1125, 1135 (5th Cir. 1992).

### 1. September 8, 2004 Transactions

Bellos contends that any securities claims by Wolfe stemming from the September 8, 2004 transactions are barred by the five-year statute of repose. Wolfe responds that because she alleges in her Complaint that Bellos used a fraudulent scheme to defraud her via a series of fraudulent representations, the period of repose does not begin until the date the last misrepresentation was made on or about September 7, 2010.[1] The court disagrees.

As a preliminary matter, the court notes that the cases cited by Wolfe are not binding precedent and are contrary to precedent that is binding on this court. Wolfe's fraudulent scheme argument based on Bellos's ongoing misrepresentations is akin to a continuing wrong or fraudulent concealment theory premised on equitable tolling. Statutes subject to a statute of repose, however,

---

[1] For support, Wolfe relies on *Alaska Elec. Pension Fund v. Olofson*, 2009 WL 1580296 (D. Kan. 2009) and *In re Dynex Capital Securities Litigation*, No. 05-CIV-1897 (HB), 2006 WL 314524 (S.D.N.Y. Feb. 10, 2006), *vacated in part by Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190 (2d Cir. 2008).

**Memorandum Opinion and Order – Page 10**

are not subject to equitable tolling. *Lampf, Pleva, Lipkind, Prupis & Petigrow*, 501 U.S. at 361; *see also In re Affiliated Computer Servs. Derivative Litig.*, 540 F. Supp. 2d 695, 701 (N.D. Tex. 2007) (rejecting plaintiffs' argument that the continuing wrong theory applies to toll limitations and repose until the last alleged misrepresentation was made and dismissing section 10(b) and Rule 10b-5 claims as time barred under the statute of repose applicable to those claims); *Engel v. Sexton*, Civ. A. Nos. 06-10447, 06-10547, and 07-116, 2009 WL 361108, at *15 (E.D. La. Feb. 11, 2009) (same). Rather, a statute of repose is a fixed, statutory cutoff date that is not dependent the claimant's awareness of a violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow*, 501 U.S. at 363; *In re Affiliated Computer Servs. Derivative Litig.*, 540 F. Supp. 2d at 701; *Engel*, 2009 WL 361108, at *15. Because the instant suit was not filed until August 12, 2011, almost seven years after the alleged misrepresentations were made by Bellos, the court concludes that Wolfe's section 10(b) and Rule 10b-5 claims based on false statements made on or before September 8, 2004, are all barred under the five-year statute of repose applicable to those claims. Dismissal of these claims is therefore appropriate.

### 2. "Investments/Loans" for $17,000, $14,000, and $35,000

Bellos argues that Wolfe's newly asserted claims based on the loans she made in 2009 and 2010 to the Partnership for $17,000, 14,000, and $35,000 should also be dismissed because Wolfe does not allege that any notes were executed to evidence these loans. Even if notes were executed, Bellos contends that notes evidencing a lending transaction between a payor and payee do not necessarily constitute a security. Bellos further asserts that Wolfe's securities claims as to these

transactions fail because the Complaint does not allege the purchase or sale of a security in connection with the conduct that allegedly occurred in 2009 and 2010.[2]

Wolfe contends that her Complaint alleges investments in 2009 and 2010 that qualify as purchases or sales of securities. Wolfe notes that all prior references in her Original Complaint to loans were changed to "investments/loans." *See* Pl.'s Sur-reply 3. Wolfe asserts that the court must accept as true, for purposes of the motion to dismiss, that these transactions are investments. Wolfe acknowledges that a loan is not automatically considered a security in this circuit. To determine whether the loans at issue are securities, Wolfe contends that the court must apply the *Howey* test to the facts of this case to determine "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." Pl.'s Sur-reply 2-3; *see SEC v. W. J. Howey Co.*, 328 U.S. 293, 301 (1946).

Section 3(a)(10) of the 1934 Act defines "security" as:

any note, stock, treasury stock, bond, debenture, certificate of interest or participation in profit-sharing agreement or in any oil, gas or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing ; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

---

[2] For support, Bellos cites *McClure v. First National Bank*, 497 F.2d 490, 492-493 (5th Cir. 1974) (note evidencing lending transaction between payor and payee does not constitute a security) and *Herpich v. Wallace*, 430 F.2d 792, 805-06 (5th Cir. 1970) ("Section 10(b) and Rule 10b-5 do not proscribe all fraudulent schemes concocted to take undue advantage of investors, but only those fraudulent schemes that are employed in connection with the purchase or sale of any security.").

15 U.S.C. § 78c(a)(10). Based on Wolfe's argument that the loans were investments and her assertion that the *Howey* test applies, it appears that she contends the loans she made to the Partnership in 2009 and 2010 qualify as either notes or investment contracts under section 78c(a)(10). *See id.* Although section 78c(a)(10) literally applies to "any note" and "investment contract," a literal application of this statute was rejected by the Supreme Court in *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 838 (1975). Instead, the focus should be on the economic realities of the transaction. *Id.* at 849.

As noted by Wolfe, the test for distinguishing a securities transaction from an ordinary commercial transaction is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *W. J. Howey Co.*, 328 U.S. at 301. The "touchstone" of whether a transaction is a security is: "the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *Forman*, 421 U.S. at 852. *Forman* defined "profits" as "either capital appreciation resulting from the development of the initial investment . . . or a participation in earnings resulting from the use of the investors' funds . . . ." *Id.* at 852-53. "Expectation of profit carries with it a connotation of potential appreciation or depreciation in value of the investment contract. That is, the arrangement must be so structured as to contemplate, at the outset, some risk–either that the investor could lose his investment, or that the value of his return could fluctuate." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 284 (5th Cir. 1992).

In applying the *Howey* test, the Fifth Circuit in *Bellah v. First National Bank*, 495 F.2d 1109 (5th Cir. 1974), stated that a note's status as a security depends on whether it can be "characterized

**Memorandum Opinion and Order – Page 13**

as commercial or investment in nature." *Id.* at 1112-13. The court held that a promissory note secured by a deed of trust on real property was not a security because it was issued in the context of an ordinary commercial loan transaction. *Id.* at 1113-14. "The 'commercial-investment dichotomy' adopted in *Bellah* was reaffirmed in *McClure v. First National Bank*, 497 F.2d 490, 495 (5th Cir. 1974), *cert. denied*, 420 U.S. 930 (1975); *Woodward v. Metro Bank*, 522 F.2d 84, 92 (5th Cir. 1975); and *National Bank of Commerce v. All American Assurance Co.*, 583 F.2d 1295, 1301 (5th Cir. 1978). *See United American Bank of Nashville v. Gunter*, 620 F.2d 1108, 1115 (5th Cir. 1980) (discussing *Bellah* commercial-investment dichotomy and other Fifth Circuit cases that have followed the same reasoning). Applying the "commercial-investment dichotomy," which restricts the scope of a security to notes that have the character of an investment and excludes those of a commercial nature, these courts held that ordinary commercial notes secured by a pledge of collateral are not securities. *Id.*

Other than stating in conclusory fashion that the loans at issue are investments, Wolfe fails to provide any explanation as to why the loans at issue qualify as investments under the *Howey-Forman* test. Moreover, while Wolfe asserts that the issue of whether a loan is a security depends on the facts and circumstances of each case, her Complaint as amended contains little or no facts regarding the loans she made in 2009 and 2010. As previously noted, while a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level." *Id.* (quotation marks, citations, and footnote omitted). Wolfe's

reference to "investment/loan" in her Complaint is nothing more a conclusory label devoid of any factual allegations. Thus, contrary to Wolfe's belief, the court is not required to accept as true her conclusory statement that the loans are investments that qualify as securities.

The minimal facts alleged in the Complaint regarding the loans leads the court to conclude that they are not securities under the *Howey-Forman* test but rather ordinary commercial transactions outside the purview of the federal securities laws. Wolfe does not allege that a promissory note or notes were executed to evidence the loans at issue. Moreover, according to the Complaint, the only money Wolfe expected to receive as a result of making the loans was repayment of the principal loans. Wolfe does not allege that she anticipated any additional appreciation in the value of the amounts loaned; nor does she allege that she expected to receive interest or any other appreciation on the loans. Even if the loans had a fixed rate similar to the prior loan Wolfe made to Bellos, it would not satisfy the expectation-of-profits prong of the *Howey-Forman* test. Furthermore, any income on the loans was not to be derived from any "managerial efforts" of Bellos, Beys, or the Partnership, but instead was to be achieved by simple repayment of the loans. *See United American Bank of Nashville*, 620 F.2d at 1116-19.

Additionally, the Complaint does not state that repayment of the loans was conditioned on the success of the Partnership or that Wolfe planned on sharing any profit from the loans with the Partnership. Rather, repayment of the loans was merely a function of the Partnership's ability to repay the loans, and Wolfe does not allege that she would accept or that the Partnership could force her to accept any less than the amounts loaned. *See Guidry*, 954 F.2d at 284. Wolfe also acknowledges that the loans were not extended to the Partnership so that it could obtain investment

**Memorandum Opinion and Order – Page 15**

assets but instead was intended to be used to pay the Partnership's business debt in an effort to solve its financial problems. The loans made by Wolfe to the Partnership therefore fail to satisfy the third and fourth prongs of *the Howey-Forman* test for a security and investment contract. *See Williamson v. Tucker*, 645 F.2d 404, 426-29 (5th Cir.) (discussing cases in which notes were held not to be investments or securities), *cert. denied*, 454 U.S. 897 (1981). These factors and the economic realities of the transaction described in the Complaint negate the validity of Wolfe's assertion that the loans are investments in the Partnership. Bellos is therefore entitled to dismissal of these claims.

## IV. Amendment of Pleadings

When considering whether to allow an amendment of the pleadings, a district court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted). During the pendency of Defendant's Motion to Dismiss, Plaintiff filed the current Complaint in an attempt to cure the deficiencies alleged by Bellos. As previously stated, the court relied on the amended pleading to reach its decision. Although Wolfe has not requested to further amend her pleadings, the court concludes that she should not be allowed to amend for two reasons. First, she has had sufficient opportunity to set forth facts to state viable federal claims if they exist and failed to correct the prior deficiencies. Allowing further attempts to amend and state a federal claim will only result in undue delay. The court is not convinced that Wolfe can amend her pleading to state sufficient factual details consistent with what is required to defeat a Rule 12(b)(6) motion. Second, she can assert no

allegations that would alter the legal effect of the statute of repose or the commercial character of the loans that are the basis of her federal securities claims. Therefore, the defects cannot be cured by further amendment, and any attempt at amendment to state a claim will be futile. For these reasons, the court will not permit further amendment.

## V.     Supplemental Jurisdiction

Bellos argues that the court should decline to exercise jurisdiction over Wolfe's state law claims because: (1) the issues raised by the state claims "will turn on complicated questions of Texas law"; (2) the seven state claims asserted by Wolfe predominate over the one federal claim; and (3) dismissal before trial of Wolfe's federal securities claim warrants dismissal of the pendent state claims. Bellos also maintains that judicial economy will be served, because of the three pending cases involving Bellos, Wolfe, and the Partnership, only one state court case that is pending in County Court at Law No. 4, Dallas County, Texas, has all of the required parties joined in one case. Bellos asserts that convenience of the parties is neutral but fairness dictates that the court decline to exercise supplemental jurisdiction because Wolfe allowed the state court case she initiated to be dismissed while Bellos's counterclaim remained pending. According to Bellos, Wolfe then proceeded to file this action in a blatant attempt at forum shopping. Wolfe disputes Bellos's forum shopping accusation but does not otherwise explain why the court should exercise jurisdiction over her state law claims in the event her only federal securities claim is dismissed.

As a general rule, courts "decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999), *cert. denied*, 528 U.S. 1076 (2000);

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). In deciding whether to exercise supplemental jurisdiction, courts consider the statutory provisions of 28 U.S.C. § 1367(c), as well as "the balance of the relevant factors of judicial economy, convenience, fairness, and comity." *Id.* at 350-51. No single factor is dispositive. *Id.*

Here, it does not appear that Wolfe's state claims involve novel or complex issues of state law; however, state court is usually the preferred forum for state law claims. In any event, all of the remaining factors weigh in favor of the court declining to exercise supplemental jurisdiction. There has been minimal activity in the case since it was filed in August 2011. Although it appears the parties have begun to conduct some discovery, the court only recently entered a scheduling order setting the case for trial in March 2013, minimal judicial resources have been expended, and the court has not addressed the merits of any of Wolfe's state law claims. Likewise, there is no indication the parties have spent a sizeable amount of money or time preparing this litigation in federal court, whereas it appears the parties have undertaken a fair amount of discovery in relation to the state court cases. The court further concludes that dismissal of this action without prejudice to Wolfe's right to bring or assert the claims in state court, would not be unfair or inconvenient since, according to Wolfe's pleadings, she and Bellos, and the Partnership property are all located in the State of Texas. In light of these facts and the court's dismissal of Wolfe's federal securities claims, the court declines to exercise supplemental jurisdiction over her state claims.

## VI. Bellos's Alternative Request that the Court Abstain or Abate

Having determined that dismissal of Wolfe's claims is appropriate, the court **denies as moot** Bellos's alternative argument that the court should abstain and abate the case pending resolution of related cases filed by the parties that are pending in state court. Moreover, the court notes that neither party sufficiently briefed this issue or provided necessary information regarding the state court proceedings for the court to make an informed decision as to this issue.

## VII. Reference of Motion to Quash is Vacated

On February 21, 2012, third party Beys filed a Motion to Quash Subpoenas Duces Tecum (Do. 24) served by Wolfe. On Februrary 23, 2012, the court referred the motion to Magistrate Judge Renee Harris Toliver for hearing, if necessary, and determination. In light of the court's ruling herein, the reference of Bey's motion is unnecessary. The court therefore **vacates the reference** of Beys's Motion to Quash Subpoenas Duces Tecum to the magistrate judge.

## VIII. Conclusion

For the reasons herein stated, the court **grants** Defendant's Motion to Dismiss as to Wolfe's federal claims brought pursuant to section 10(b) of the Securities Exchange Act and Rule 10b-5 and **dismisses with prejudice** these federal claims; **denies as moot** Defendant's Alternative Motion to Abate; and **declines** to exercise supplemental jurisdiction over Wolfe's pendent state law claims (Counts 2-7 of Wolfe's Amended Complaint) and **dismisses** them **without prejudice** to Wolfe's right to bring the claims in state court. The court, as required by Rule 50 of the Federal Rules of Civil Procedure, will issue judgment by separate document.

**It is so ordered** this 28th day of February, 2012.

                                              Sam A. Lindsay
                                              United States District Judge

**Memorandum Opinion and Order – Page 20**